

Rifkin Law Office

3630 High Street #18917
Oakland, CA 94619
www.rifkinlawoffice.com

Phone: (510) 414-4132
Email:  lrifkin@rifkinlawoffice.com

December 3, 2021

**VIA ECF**
Hon. Phyllis J. Hamilton
United States District Judge
Oakland Courthouse
3rd Floor – Courtroom 3

> Re: Discovery Dispute Regarding Documents Related to *Hernandez v. County of Monterey* & Patient Work Safety Product
> *Estate of Rafael Ramirez Lara, et al., v. County of Monterey, et al.*
> Case No. 4:21-cv-02409-PJH

Dear Judge Hamilton,

Pursuant to the Case Management and Pretrial Order, ECF 35, and this Court's Standing Order Regarding Discovery Disputes, Protective Orders, and ESI Orders, the parties submit this Joint Letter regarding their discovery dispute.

**Plaintiffs' Statement**

I.  Introduction

Plaintiffs' Fourteenth and Eighth Amendment claims include allegations of deliberate indifference by certain Defendants with respect to treatment of Mr. Lara specifically, and *Monell*-type deliberate indifference by County and Wellpath Defendants with respect to deficient custody and health treatment policies, procedures, and practices at Monterey County Jail. ECF 1 at 18-22. Accordingly, Plaintiff Estate of Lara propounded discovery requests including requests for production of documents related to reviews of Mr. Lara's death and documents related to Defendants' notice of the systemic deficiencies that Plaintiffs allege resulted in Mr. Lara's death.

Defendants County and Wellpath (formerly CFMG) are also Defendants in a class action regarding custody and health policies and practices at the Jail, *Hernandez v. County of Monterey,* No. 13-cv-2354-BLF (N.D. Cal., filed May 23, 2013). *See* ECF 1 at 9-11. In April 2015, after finding substantial evidence that Defendants subjected people in their custody to risk of serious harm, the *Hernandez* Court issued a preliminary injunction ordering Defendants to file a plan to remedy these violations. *Id.* On May 11, 2015, the *Hernandez* parties filed a settlement agreement requiring Defendants to create Implementation Plans for ensuring safety and adequate treatment of people in the Jail. *Id.* In April 2016, Defendants submitted Implementation Plans to the Court. *Id.* The *Hernandez* parties and Court have since been engaged in ongoing monitoring and litigation regarding compliance and enforcement of the settlement agreement and Implementation Plans.  This includes reviews by "neutral" monitors selected by the parties of policies, procedures, practices, and deaths of class members (including Mr. Lara) at the Jail.

The instant dispute concerns the discoverability of documents generated and/or produced in the *Hernandez* case that are responsive to *Lara* Plaintiffs' discovery requests. Defendants assert that the protective order entered in *Hernandez* prohibits production of these documents. Wellpath Defendants also claim that morbidity and mortality reviews of Mr. Lara's death are protected as Patient Safety Work Product ("PSWP") under 42 U.S.C. § 299b et seq.

II. Procedural History

Plaintiff Estate served first sets of requests for production of documents ("RFPs") on each of the six County Defendants and five Wellpath Defendants in August 2021. All Defendants requested extensions of time to respond to the RFPs, and the parties have engaged in various meet and confer calls and video meetings regarding the RFPs in September, October, and November. In an October 6, 2021 video meet and confer, Wellpath Defendants' counsel stated their position that the protective order in the *Hernandez* case precludes production of numerous documents that would be responsive to *Lara* Plaintiffs' RFPs, and asserted that morbidity and mortality reviews of Mr. Lara's death are protected as Patient Safety Work Product. On October 20, 2021, Wellpath Defendants provided a privilege log identifying 14 documents withheld under the *Hernandez* protective order and 3 documents withheld as PSWP. In an October 25, 2021 meet and confer, County Defendants' counsel stated they needed to clarify the County's position regarding production of *Hernandez*-related documents and would provide a privilege log. County Defendants sent an email on November 15, 2021 asserting that the *Hernandez* protective order shields production of responsive documents and declining to produce a privilege log. Plaintiffs and County Defendants met and conferred by video regarding this issue on November 19, 2021.

Plaintiff Estate also served a third-party subpoena for documents on *Hernandez* class counsel on November 3, 2021, with prior notice to Defendants as required by Fed. R. Civ. P. 45. On November 16, 2021, County and Wellpath Defendants served objections to the subpoena reiterating their position that the *Hernandez* protective order prohibits production of *Hernandez*-related documents. On November 18, 2021, *Hernandez* class counsel responded to the subpoena stating their position that these documents are discoverable and should be produced under the *Lara* protective order (*Lara* ECF 43). However, in light of Defendants' objections, instead of producing the documents, *Hernandez* class counsel provided a privilege log identifying approximately 225 documents (excluding attorney work product) responsive to Plaintiffs' subpoena. All parties agreed that this dispute is now ripe to present to this Court.[1]

Plaintiffs do not agree that Defendants' proposal of referring this matter to Magistrate Judge Cousins—who oversees ongoing settlement discussions and other matters in the *Hernandez* case to which the *Lara* Plaintiffs are not privy—is appropriate. The *Hernandez* Court already declined to

---

[1] Prior to the opening of discovery in the instant case, Plaintiffs moved to intervene in the *Hernandez* case for the limited purpose of obtaining Jail custody records for Mr. Lara. *Hernandez* ECF 693. The County had previously produced these records to *Hernandez* class counsel but refused to produce the records to *Lara* Plaintiffs in response to Public Records Act request, and *Hernandez* class counsel stated they could not produce because the records were designated confidential under the *Hernandez* protective order. *Id.* The *Hernandez* Court granted *Lara* Plaintiffs' motion for limited intervention and modified the protective order to permit *Lara* Plaintiffs access to the requested custody records for Mr. Lara. The instant discovery dispute does not concern that set of documents, and the *Hernandez* Court stated that discoverability of other documents would need to be resolved by the *Lara* Court. *Hernandez* ECF 700 at 7.

relate the *Lara* case to *Hernandez,* ECF 11, and also clearly indicated that discoverability of documents in the *Lara* case is properly before the *Lara* Court. *Hernandez* ECF 700 at 7.

III. Argument

Plaintiffs request formal briefing because the abbreviated joint letter format does not allow Plaintiffs to present full legal argument with respect to the discoverability of the *Hernandez*-related and Patient Safety Work Product documents. In short, these documents are responsive to Plaintiff Estate's RFPs, relevant to Plaintiffs' claims, the *Hernandez* protective order does not preclude production, and federal case law and discovery principles require production here.

"Ninth Circuit precedent strongly favors disclosure" of information obtained in one case to meet the needs of pending litigation in another. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003); *see also Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-265 (9th Cir. 1964). Neither the *Hernandez* protective order, nor settlement agreement, nor Implementation Plan designates the parties' or monitors' reviews of deaths, policies, procedures, or practices, confidential. To the extent any such reviews contain private patient information other than Mr. Lara's that would be protected, it may be redacted. It would also be improper for the *Hernandez* protective order to prohibit sharing of records from the class action to shield Defendants from exposure in individual damages suits. *See Olympic*, 332 F.2d at 265-66 (expressly rejecting this type of reasoning in context of private damages actions following antitrust suits because such damages actions "are an important component of the public interest in vigilant enforcement of the antitrust laws," and "neither in the express nor implied terms of the statutes or rules is there any indication that a consenting defendant could gain the additional benefit of holding under seal, or stricture of nondisclosure…information which would otherwise be available to the public or at least to other litigants who had need of it."). Section 1983 damages suits are similarly an important component of the public interest in vigilant enforcement of civil rights laws. *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 562 ("A civil rights action for damages does not constitute merely a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."). It is especially objectionable for Defendant County—a public entity—to attempt to keep records relating to its public function of running a Jail confidential.

With respect to the morbidity and mortality reviews of Mr. Lara's death, Wellpath has not made a sufficient showing that the reviews were prepared solely for the purpose of reporting to a Patient Safety Organization, and the fact that the reviews have been shared with the County and *Hernandez* class counsel demonstrates that the Patient Safety Work Product privilege does not apply. *See Penman v. Correct Care Sols., LLC,* No. 518CV00058TBRLLK, 2020 WL 4253214 (W.D. Ky. July 24, 2020)*; Crook v. Dart,* 408 F. Supp. 3d 928 (N.D. Ill. 2019)*; Tanner v. McMurray,* 405 F. Supp. 3d 1115 (D.N.M. 2019); *Johnson v. Cook Cty.,* No. 15 C 741, 2015 WL 5144365 (N.D. Ill. Aug. 31, 2015).

**County of Monterey and Wellpath's Statement**

Defendants County of Monterey ("County") and Wellpath (formerly California Forensic Medical Group) contend that the documents generated and/or produced in the class action *Hernandez v. County of Monterey, California Forensic Medical Group, et al.,* United States District Court Case No. 5-13-cv-02354-BLF (N.D. Cal.) are confidential and protected from disclosure pursuant to a Protective Order issued in the *Hernandez* case. This would encompass any and all neutral monitor reports,

assessments, audit reports, and corrective action plans generated in the case. In addition, the *Lara* Plaintiffs' discovery requests seek confidential information regarding other third parties, such as inmates' mental health and medical information, which implicate their privacy rights. 45 C.F.R. Parts 160 and 164 [HIPAA]. Furthermore, the monitor reports, assessments, and audit reports are completely irrelevant to the care and treatment of Mr. Rafael Ramirez Lara while he was incarcerated at the Monterey County Jail. As such, the County and Wellpath have asserted objections on these bases, along with objections to the overbreadth of the discovery sought.

Additionally, the Neutral Monitors explicitly conveyed their desire to the parties in *Hernandez* that their reports were to remain strictly confidential and were only to be used within the *Hernandez* litigation. This was agreed to by the attorneys in *Hernandez*. This is also confirmed by the fact that none of the monitor reports have been filed in the *Hernandez* action. Knowledge that the monitor reports are confidential assures there is a free flow of information between the parties and Monitors with the goal of improving custody operations and quality of care within the Monterey County Jail. Counsel for the County (Susan K. Blitch) and counsel for Wellpath (Peter Bertling) can provide declarations with regard to the confidentiality of the monitor reports, as may be appropriate.

In this Court's May 27, 2021 Order Granting the *Lara* Plaintiffs' Motion for Permissive Intervention and Clarification or Modification of Protective Order; and Vacating Hearing Set for December 2, 2021, The Hon. Judge Freeman ordered that the "*Hernandez* Protective Order is hereby MODIFIED to grant the *Lara* Plaintiffs access to Lara's medical and custody records, including any incident report or document relating to his death, that were produced in the *Hernandez* case." (ECF Dkt. 700, 7:18-20.) The Court did not grant Plaintiffs unfettered access to the *Hernandez* records. In fact, the Court specifically stated that it "makes no comment on what may or may not be discoverable or admissible in the Lara case" in connection with the Order. (ECF Dkt. 700, 7:9-10).

In addition, County and Wellpath contend that the preparation of a privilege log denoting such information as the author, recipient, date and description of the document in and of itself would violate the Protective Order as such documents were prepared exclusively for use in the *Hernandez* litigation. FRCP 26(b)(5) does not mandate that a document-by-document privilege log is required. *In re Imperial Corp. of America*, 174 F.R.D. 475, 477 (S.D. Cal. 1997).

As a proposed solution to this discovery dispute, Defendants recommend that a settlement conference or informal discovery dispute hearing be scheduled before Judge Nathanael Cousins. Plaintiffs disagree with defendants' understanding of the nature and confidentiality of the neutral reports. However, emails from the *Hernandez* Plaintiffs' counsel certainly indicate that they represented the Corrective Action Plans (and by correlation the monitor reports) are subject to the protective order in *Hernandez*. It is also apparent that the understanding of the Neutral Monitors themselves is in conflict. Clarity on these issues is imperative and Judge Cousins would be most effectively situated to resolve these issues. Judge Cousins is intimately familiar with the issues raised by the production of documents relative to the *Lara* Plaintiffs' subpoena and the impact a ruling on the discoverability of this documentation could have on the Court's time and resources, as well as the general deterrent to the resolution of the *Hernandez* matter.

**Wellpath Defendants' Additional Statement on 42 U.S.C. § 299b-22**

Specific to documentation related to the Mortality and Morbidity Report(s) from the Monterey County Jail was requested by plaintiffs in connection with their subpoena for records at issue here. In addition to all the joint objections with Monterey County articulated above, Wellpath defendants also asserted

an objection on the basis that the documentation was privileged pursuant to 42 USC § 299b-22 (The Patient Safety and Quality Improvement Act of 2005 or "PSQIA").  This act recognizes that providers who contribute to quality improvement in our nation's healthcare organizations can only do so candidly and effectively if they are assured that their efforts to improve patient safety are not used against them in courts and administrative proceedings. Wellpath defendants contend this documentation is self-critical analysis and Patient Safety Work Product (PSWP) and as such is protected from disclosure by the PSQIA.

All PSWP is privileged and confidential pursuant to 42 USC § 299b-22(a)(1). PSWP is defined broadly to include any data, reports, records, memoranda, analyses such as root cause analyses [and related documents, notes, and reports], peer review worksheets and findings, proactive risk assessments, or continuous quality improvement [CQI] studies), deliberations (such as mortality and morbidity reviews, peer review findings (adverse event/near miss reporting/faulty device reporting and related analyses), or written or oral statements as "information collected and developed for the purpose of reporting to a Patient Safety Organization" and "information developed by a Patient Safety Organization for the conduct of patient safety activities" that "could improve patient safety, quality of care and patient outcomes." 42 CFR 3.20.  Given Wellpath's participation in the Patient Safety Organization "The Center for Patient Safety" to which said Mortality and Morbidity reports are exclusively prepared for, the reports fall into the PSWP contemplated by the PSQIA's privilege.

Plaintiffs' assert that since the documentation was "shared" with RBBG and counsel for Monterey County, they have lost their protections under the PSQIA.  However, the disclosure of these reports was of an extremely limited, court-ordered and read-only nature, and the actual documentation itself was never shared beyond the PSO.  This limited disclosure cannot and should not preclude this documentation from privilege.

**Position of *Hernandez* Plaintiffs**

Lara's survivors seek communications and neutral expert reports regarding the care that Lara himself received at the jail.  Lara's survivors also seek communications and neutral expert reports regarding the overall adequacy of medical, mental health and security functions at the jail.  To the extent that such materials contain information properly covered by the *Hernandez* protective order, i.e., proprietary information, security-sensitive information, confidential personal information, and/or information reasonably believed to be protected from disclosure pursuant to law, then they should be produced under the *Lara* protective order, so that all such legitimate confidentiality interests are protected.  *Hernandez* plaintiffs' counsel identified over 200 responsive documents and identified them individually in a log emailed to all parties.

County/Wellpath counsel write in this Joint Letter that the neutral experts stated their "desire" that their reports remain confidential and "only be used within the *Hernandez* litigation."  Some, but not all, of the neutral experts have expressed such a preference.  For reasons explained below, that preference does not create a privilege and does not override the rights of other litigants to access relevant information.

County/Wellpath counsel also write:  "This was agreed by the attorneys in *Hernandez*."  It is not clear what "this" refers back to.  If it refers back to the fact that some experts prefer confidentiality of reports, *Hernandez* plaintiffs' counsel do not dispute that.  If it refers to the notion that is proper to keep the reports from the public and/or from collateral litigants, *Hernandez* plaintiffs' counsel do not agree.  Nor is there any support for such secrecy in the *Hernandez* order appointing the neutrals. The

order appointing the neutral experts contains no provision making their work confidential. (*Hernandez* 5:13:2354 ECF No. 657.)  The presumption is public access, not secrecy.  *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003).  If County/Wellpath wanted a rule contrary to the presumption, they should have included it in the neutral experts' order of reference.

Even if the neutral experts prefer their reports to be kept secret, their preference does not amount to "the specific harm or prejudice" required under *Foltz,* 331 F.3d at 1131, to justify such withholding of relevant information.  Even if the neutral monitors' desire for secrecy from the public rose to the level of "specific harm or prejudice" necessary for sealing the material, *Foltz* teaches that collateral litigants are not to be treated as "the public."  Collateral litigants have the right to access discoverable material, and can do so under a protective order to avoid any "harm or prejudice" that might result from public disclosure.  *Id.* at 1131-32.

The Ninth Circuit has required disclosure of protective order materials even where the proponent of secrecy asserts far stronger privacy interests than are asserted here.  In *In re Roman Catholic Archbishop of Portland in Oregon,* 661 F.3d 417 (9th Cir. 2011), two priests attempted to keep their personnel records under seal on the grounds that disclosure would unfairly label them as child molesters, harming their livelihoods, reputations, loss housing, and public humiliation. *Id.* at 426-427.  The Ninth Circuit balanced these very serious privacy concerns against the public's interests in disclosure, and ruled against the priests, requiring disclosure of their files, though allowing redaction of one of the priest's names.  *Id.* at 428.

What is the privacy interest asserted here?  According to County/Wellpath, continued secrecy "assures there is a free flow of information between the parties and Monitors with the goal of improving custody operations and quality of care within the Monterey County Jail."  The alleged interest served by confidentiality is illusory, as the parties' Settlement Agreement and the Order Appointing Neutral Monitors and Order of Reference already ensures neutral experts' access to documentation from Defendants as well as access to "all jail facilities" and "to meet and interview personnel whose duties pertain to the provision of services and/or who work with inmates in the area of the expert's expertise." [ECF 483-2 ¶¶ 39-40; ECF 563 ¶¶ 5-6, 8.]

There is also no evidence that the interest of improving the jail is in any way served by secrecy.  The idea that people at the jail will only be honest with the neutral monitors under a cloak of secrecy improperly assumes that public employees would otherwise hide the truth.

Even assuming that some protection is necessary for a free flow of information, that protection should not extend to withholding information from the very persons whose welfare is supposed to be served by this interest.  Mr. Lara was a *Hernandez* class member who died at the jail.  His survivors have brought litigation in this Court regarding the quality of care he received.  Lara's complaint was serious and plausible enough to be answered and not dismissed.  The public interest in improving conditions at the jail is served by private litigants such as *Lara* just as it is by class actions such as *Hernandez*, and such private actions require no less in access to information for full and fair adjudication*. See, e.g., City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986) (private litigation serves public interest)*; M.H. v. County of Alameda*, 62 F.Supp.3d 1049 (N.D. Cal. 2014) (example of individual jail death case with extensive and complex discovery).

The Court should allow discovery of the material sought there.

Respectfully submitted,

/s/ *Lori Rifkin*
Lori Rifkin
Attorneys for Plaintiffs

/s/ *Jemma Saunders*
Jemma Saunders
Attorneys for Wellpath Defendants

/s/ *Ellen Lyons*
Ellen Lyons
Attorneys for County of Monterey Defendants

/s/ *Ernest Galvan*
Ernest Galvan
Attorneys for *Hernandez* Plaintiffs